**BROWN KWON & LAM LLP**
Clara Lam, Esq. (CL6399)
275 7th Avenue, Suite 701
New York, NY 10001
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ALEKSANDRA PEROVIC,**<br>*on behalf of herself and others similarly situated*,<br><br>        **Plaintiff,**<br><br>    - against -<br><br>**LOVELACE TAVERN, LLC**<br>    **d/b/a PORTERHOUSE BREW CO. BAR**<br>    **d/b/a THE LOVELACE,**<br>**BROADWATER & PEARL ASSOCIATES LLC**<br>    **d/b/a FRAUNCES TAVERN,**<br>**DERVILA BOWLER,**<br>**EDMUND TRAVERS,**<br>**and JASON FRANCISCO,**<br><br>        **Defendants.** | **No: 1:20-cv-1340**<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff ALEKSANDRA PEROVIC ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to herself, and upon information and belief as to other matters, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, LOVELACE TAVERN, LLC d/b/a PORTERHOUSE BREW CO. BAR d/b/a THE LOVELACE, BROADWATER & PEARL ASSOCIATES LLC d/b/a FRAUNCES TAVERN (collectively, "Corporate Defendants"), DERVILA BOWLER, EDMUND TRAVERS, and JASON FRANCISCO (collectively, "Individual Defendants," and together with Corporate Defendants, "Defendants") and alleges as follows:

1

## INTRODUCTION

1.      Plaintiff brings this action on behalf of herself and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid minimum wage due to invalid tip credit, (2) unpaid minimum wage and overtime wages due to time-shaving, (3) unpaid minimum wage and overtime wages for training time, (4) unlawfully retained tips, (5) liquidated damages, and (6) attorneys' fees and costs.

2.      Plaintiff also brings this action on behalf of herself and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wage due to invalid tip credit, (2) unpaid wages due to time-shaving, (3) unpaid wages for training time, (4) unpaid spread-of-hours premium, (5) misappropriated tips, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

3.      Plaintiff further alleges, pursuant to the New York State Human Rights Law, New York State Executive Law, Article 15 §§ 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that she was deprived of her statutory rights as a result of Defendants' discriminatory employment practices on the basis of pregnancy, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.     This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

*__Plaintiff__*

> ***ALEKSANDRA PEROVIC***

8.     Plaintiff is an adult who resides in Queens County, New York.

9.     Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

10.    Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

*__Defendants__*

11.    At all relevant times, Defendants owned and operated an enterprise comprised of three (3) restaurants with trade names and addresses as follows:

   a.   "Porterhouse Brew Co. Bar" – 36 Water Street, New York, NY 10004;

   b.   "The Lovelace" – 66 Pearl Street, New York, NY 10004; and

   c.   "Fraunces Tavern" – 54 Pearl Street, New York, NY 10004

        (collectively, "Porterhouse Restaurants").

12.    At all relevant times, Defendants owned and operated Porterhouse Restaurants as a single integrated enterprise. Specifically, Defendants had a common business purpose, shared

3

common ownership and management, engaged in interrelated operations, and have centralized control of labor relations.

13.    At all relevant times, employees, food and supplies were interchangeable and freely transferred among Porterhouse Restaurants.

14.    At all relevant times, Porterhouse Restaurants was operated under the same wage and hour policies established by Individual Defendants.

15.    At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

16.    At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.    At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

### *LOVELACE TAVERN, LLC*

18.    Corporate Defendant LOVELACE TAVERN, LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 36 Water Street, New York, NY 10004 and an address for service of process located at c/o Matthew R. Yogg, Esq., Davidoff Hutcher & Citron LLP, 605 Third Avenue, New York, NY 10158.

19.    At all relevant times, LOVELACE TAVERN, LLC has done business as Porterhouse Brew Co. Bar and The Lovelace.

20.    At all relevant times, LOVELACE TAVERN, LLC had an annual dollar volume of sales in excess of $500,000.

21.    LOVELACE TAVERN, LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

22.    At all relevant times, LOVELACE TAVERN, LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

23.    LOVELACE TAVERN, LLC applies the same employment policies, practices and procedures to all non-exempt employees at Porterhouse Restaurants.

24.    LOVELACE TAVERN, LLC is listed as the payor on pay stubs received by employees of Porterhouse Brew Co. Bar and The Lovelace.

### *BROADWATER & PEARL ASSOCIATES LLC*

25.    Corporate Defendant BROADWATER & PEARL ASSOCIATES LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 54 Pearl Street, New York, NY 10004 and an address for service of process located at c/o Matthew R. Yogg, Esq., Davidoff Hutcher & Citron LLP, 605 Third Avenue, New York, NY 10158.

26.    At all relevant times, BROADWATER & PEARL ASSOCIATES LLC has done business as Fraunces Tavern.

27.    At all relevant times, BROADWATER & PEARL ASSOCIATES LLC had an annual dollar volume of sales in excess of $500,000.

28.    BROADWATER & PEARL ASSOCIATES LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

29.     At all relevant times, BROADWATER & PEARL ASSOCIATES LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

30.     BROADWATER & PEARL ASSOCIATES LLC applies the same employment policies, practices, and procedures to all non-exempt employees at Porterhouse Restaurants.

### *DERVILA BOWLER*

31.     At all relevant times, Individual Defendant DERVILA BOWLER has been an owner and operator of Porterhouse Restaurants.

32.     At all relevant times, DERVILA BOWLER has been a principal of each of the Corporate Defendants.

33.     At all relevant times, DERVILA BOWLER has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Porterhouse Restaurants.

34.     At all relevant times, DERVILA BOWLER has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Porterhouse Restaurants.

35.     At all relevant times, DERVILA BOWLER has had the power to maintain employment records, including time and/or wage records of employees at Porterhouse Restaurants.

36.     At all relevant times, DERVILA BOWLER has been actively involved in managing the day to day operations of Porterhouse Restaurants.

37.    At all relevant times, DERVILA BOWLER has had authority over personnel or payroll decisions and employment policies, practices and procedures at Porterhouse Restaurants.

38.    At all relevant times, DERVILA BOWLER has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

39.    DERVILA BOWLER is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

***EDMUND TRAVERS***

40.    At all relevant times, Individual Defendant EDMUND TRAVERS has been an owner and operator of Porterhouse Restaurants.

41.    At all relevant times, EDMUND TRAVERS has been a principal of each of the Corporate Defendants.

42.    At all relevant times, EDMUND TRAVERS has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Porterhouse Restaurants.

43.    At all relevant times, EDMUND TRAVERS has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Porterhouse Restaurants.

44.    At all relevant times, EDMUND TRAVERS has had the power to maintain employment records, including time and/or wage records of employees at Porterhouse Restaurants.

45.    At all relevant times, EDMUND TRAVERS has been actively involved in managing the day to day operations of Porterhouse Restaurants.

46.     At all relevant times, EDMUND TRAVERS has had authority over personnel or payroll decisions and employment policies, practices and procedures at Porterhouse Restaurants.

47.     At all relevant times, EDMUND TRAVERS has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

48.     EDMUND TRAVERS is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

*JASON FRANCISCO*

49.     At all relevant times, Individual Defendant JASON FRANCISCO has been an owner and operator of Porterhouse Restaurants.

50.     At all relevant times, JASON FRANCISCO has been a principal of each of the Corporate Defendants.

51.     At all relevant times, JASON FRANCISCO has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at Porterhouse Restaurants.

52.     At all relevant times, JASON FRANCISCO has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at Porterhouse Restaurants.

53.     At all relevant times, JASON FRANCISCO has had the power to maintain employment records, including time and/or wage records of employees at Porterhouse Restaurants.

54.     At all relevant times, JASON FRANCISCO has been actively involved in managing the day to day operations of Porterhouse Restaurants.

55.     At all relevant times, JASON FRANCISCO has had authority over personnel or payroll decisions and employment policies, practices and procedures at Porterhouse Restaurants.

56.     At all relevant times, JASON FRANCISCO has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

57.     JASON FRANCISCO is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

58.     Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of herself and all similarly situated current and former non-exempt employees employed at Porterhouse Restaurants owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

59.     At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members the full minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek. With respect to Plaintiff and other tipped employees (including but not limited to servers, bussers and bartenders) ("Tipped FLSA Collective Members"), Defendants unlawfully kept a portion of tips that Plaintiff and Tipped FLSA Collective Members earned from customers. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

60.    All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

61.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

62.    For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

63.    Plaintiff brings the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of herself and a class of persons consisting of all current and former non-exempt employees employed at Porterhouse Restaurants owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

64.    Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

65.    The Class includes a subclass of tipped employees comprised of servers, bussers and bartenders (the "Tipped Subclass" or "Tipped Subclass Members"). Plaintiff is a member of both the Class and the Tipped Subclass.

66.     The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

67.     The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class as well as the Tipped Subclass.

68.     Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

69.     Plaintiff and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay minimum wage due to invalid tip credit, (ii) failing to pay wages due to time-shaving and improper rounding of employees' hours worked, (iii) failing to pay wages for training time, (iv) failing to properly pay spread-of-hours premium, (v) unlawfully keeping a portion of tips, (vi) failing to provide proper wage notices, and (vii) failing to provide proper wage statements, in violation of the NYLL.

70.     Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and

patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

71.    Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

72.    Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

73.    Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

74.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

75.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would

result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

76.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

77.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

78.    Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

    a.    Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

    b.    Whether Defendants paid Plaintiff and Tipped Subclass Members at the lawful minimum wage rate;

    c.    Whether Defendants took the proper amount of tip credit allowance from Plaintiff and Tipped Subclass Members under the NYLL;

    d.    Whether Defendants provided proper notice to Plaintiff and Tipped Subclass Members that Defendants were taking a tip credit;

    e.    Whether Defendants provided proper wage statements informing Plaintiff and Tipped Subclass Members of the amount of tip credit taken for each pay period and other information required to be provided on wage statements;

f.  Whether Defendants kept weekly records of the amount of tip credit allowance claimed from Plaintiff and Tipped Subclass Members;

g.  Whether Defendants required Plaintiff and Tipped Subclass Members to perform non-tipped side work for more than two (2) hours or twenty percent (20%) of their workday;

h.  Whether Defendants kept accurate records of the amounts of tips earned by Plaintiff and Tipped Subclass Members;

i.  Whether Defendants paid Plaintiff and Class Members the full and proper wages for all hours worked due to time-shaving and improper rounding of employees' hours worked;

j.  Whether Defendants paid Plaintiff and Class Members the full and proper wages for training time;

k.  Whether Defendants paid Plaintiff and Class Members the spread-of-hours premium, as required by the NYLL;

l.  Whether Defendants misappropriated tips from Plaintiff and Tipped Subclass Members by keeping a portion of the tips they earned from customers;

m.  Whether Defendants failed to furnish Plaintiff and Class Members with proper wage notices, as required by the NYLL; and

n.  Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

79.    Plaintiff was employed by Defendants as a server at "Porterhouse Brewing Co. Bar" located at 36 Water Street, New York, NY 10004 from on or around July 16, 2019 through September 30, 2019.

80.    From the start of Plaintiff's employment in mid July 2019 until in or around early September 2019, Dervila Bowler had repeatedly praised Plaintiff's job performance, saying that the restaurant needed Plaintiff's good work and ability to serve customers well, even calling Plaintiff her favorite employee.

81.     On or around September 4, 2019, Plaintiff notified Defendants of her pregnancy. Specifically, Plaintiff informed the General Manager Lisa Christensen and restaurant owner Dervila Bowler.

82.     On or around September 8, 2019, Defendants changed her regular work schedule.

83.     On September 10, 2019, Plaintiff requested one day off for a prenatal care appointment with her doctor. In response, Defendants immediately retaliated by taking Plaintiff off of the entire schedule for the remainder of the week, knowingly causing Plaintiff to lose the wages and tips that she could earn during such time.

84.     Starting on or around September 10, 2019, Dervila Bowler became increasingly hostile towards toward Plaintiff.

85.     On or around September 13, 2019, Plaintiff informed Defendants that her doctor advised her to avoid lifting heavy objects.

86.     On September 14, 2019, Defendants attempted to demote Plaintiff from her server position to a hostess position, which meant that Plaintiff would be banned from earning any tips from customers. In addition, Defendants attempted to reduce her work schedule to only two (2) to three (3) shifts per week. Plaintiff instantly objected to such changes.

87.     On or around September 17, 2019, immediately after Defendants' failed attempts to change the terms of Plaintiff's employment, Dervila Bowler started following Plaintiff around the restaurant during her shifts with a notepad, trying to find reasons to criticize Plaintiff and threatening to write her up. No other employees at the restaurant was subject to such hostile scrutiny and unfair treatment.

88.     On or around September 17, 2019, Defendants instructed Plaintiff to carry boxes of heavy utensils up the stairs from the basement. When Plaintiff requested to be excused from

this task based on her doctor's advice and concern for her pregnancy, Defendants ignored her request and simply told Plaintiff that she needs to complete the task given to her. Plaintiff complied and moved the utensils.

89.    In the following weeks, Dervila Bowler's hostility and discriminatory treatment towards Plaintiff persisted without reason. Such work environment caused Plaintiff to feel extremely stressed during this time, despite her efforts to stay positive for the sake of her baby.

90.    On or around September 30, 2019, Defendants unilaterally terminated Plaintiff's employment.

91.    From the start of her employment until on or around September 7, 2019, Plaintiff regularly worked four (4) days per week consisting of four (4) lunch shifts and two (2) dinner shifts. During this time period, Plaintiff occasionally worked five (5) days per week consisting of five (5) lunch shifts and two (2) dinner shifts.

92.    On or around September 8, 2019, Defendants changed her regular work schedule to five (5) days per week, consisting of five (5) lunch shifts.

93.    Throughout her employment with Defendants, Plaintiff's lunch shifts were scheduled for 10:15 a.m. to 4:00 p.m. each day. In addition to her scheduled hours, Plaintiff was required to arrive early at 10:00 a.m. and perform non-tipped work until the restaurant opened at 11:00 a.m. every workday.

94.    Moreover, on days when Plaintiff was scheduled to work the lunch shift only, Plaintiff was regularly required to stay beyond her scheduled lunch shift and perform non-tipped work. Accordingly, on such days, Plaintiff actually worked until around 4:30 p.m. to 5:00 p.m.

95.    Throughout her employment with Defendants, Plaintiff's dinner shifts started at 4:00 p.m. and ended around 8:00 p.m. to 8:30 p.m.

96.     Plaintiff worked without any breaks throughout her employment with Defendants.

97.     Throughout her employment with Defendants, Defendants paid Plaintiff at the reduced tip credit minimum wage rate of $10.00 per hour.

98.     Throughout her employment with Defendants, Plaintiff was not paid wages for all hours worked each week.

99.     During their first three (3) days of employment, Plaintiff and all non-managerial employees at Porterhouse Restaurants were mandated to undergo a training period. During such three (3) days, all other newly hired employees performed the primary duties of the position for which they were hired. Specifically, Plaintiff provided wait service, ensured customer satisfaction, earned tips, and performed various non-tipped tasks at the restaurant during her training period.

100.    At all relevant times, however, Defendants had a policy to not pay any wages or tips to any employee at Porterhouse Restaurants during their training period. Accordingly, Plaintiff and all non-managerial employees never received any wages for work performed during the first three days of their employment. In addition, Plaintiff and all tipped employees never received any of the tips that they earned from customers during the first three days of their employment.

101.    At all relevant times, Defendants had a policy that improperly rounded the employees' hours worked down to the nearest half hour, and then paid wages only for those rounded hours instead of the employees' actual hours worked. For example, when Plaintiff worked six (6) hours and twenty-five (25) minutes on a particular shift, Defendants impermissibly rounded her recorded hours down to six (6) hours and paid Plaintiff for only six (6) hours. Similarly, if Plaintiff worked four (4) hours and forty-five (45) minutes on a particular

shift, Defendants impermissibly rounded her recorded hours down to and paid wages for only four (4) hours and thirty (30) minutes.

102.    Defendants' rounding policy resulted, over a period of time, in a systematic failure to pay the full and proper wages for all hours worked by Plaintiff and other non-managerial employees at Porterhouse Restaurants. Specifically, Plaintiff was not paid for two (2) to three (3) hours of compensation weekly as a result of Defendants' improper rounding policy.

103.    Throughout her employment with Defendants, Plaintiff was never paid the spread-of-hours premium for workdays that exceeded ten (10) hours per day.

104.    Throughout her employment with Defendants, Plaintiff did not receive any notices of pay rate or pay day from Defendants, as required under the NYLL.

105.    Throughout her employment with Defendants, Plaintiff did not receive proper wage statements from Defendants. Specifically, Plaintiff's wage statements were improper because they failed to accurately reflect her actual number of hours worked. In addition, the wage statements failed to state the amount of tip credit deduction for each payment period.

106.    Throughout her employment with Defendants, the cash tip amounts listed on the wage statements were regularly incorrect and different from the actual amount of cash tips Plaintiff received from Defendants. In fact, the actual cash tips she received from Defendants were regularly less than the amount stated on her wage statements.

107.    Further, Plaintiff and other tipped employees at Porterhouse Restaurants regularly noted that the tips that Plaintiff and other tipped employees received from Defendants were less than the amount they collectively earned from the customers.

108.    Each time Plaintiff requested to see Defendants' tip records to understand the discrepancies and irregularities, Defendants stated that they lost the records.

109.    Based on Plaintiff's observations and conversations with her co-workers at Porterhouse Restaurants, Plaintiff, FLSA Collective Members and Class Members were similarly paid on an hourly basis.

110.    Based on Plaintiff's observations and conversations with her co-workers at Porterhouse Restaurants, Plaintiff, Tipped FLSA Collective Members and Tipped Subclass Members were similarly paid at the reduced tip credit minimum wage rate at all relevant times.

111.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants paid wages to Plaintiff, FLSA Collective Members and Class Members weekly by check with wage statements.

112.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants paid the tips earned by Plaintiff, Tipped FLSA Collective Members and Tipped Subclass Members in cash. However, the cash tips the tipped employees received from Defendants were regularly different from and less than the cash tip amounts reflected on their wage statements each week.

113.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants failed to pay Plaintiff, Tipped Collective Members and Tipped Subclass Members the lawful minimum wage due to an invalid tip credit deduction.

114.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Plaintiff, Tipped Collective Members and Tipped Subclass Members did not receive proper notice that Defendants were claiming a tip credit.

115.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Plaintiff, Tipped Collective Members and Tipped Subclass Members did not receive notice informing them that the tips they received must be retained by them except

for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

116.     Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants failed to provide proper wage statements informing Plaintiff, Tipped Collective Members and Tipped Subclass Members of the amount of tip credit taken for each pay period. In addition, the wage statements that Defendants provided to Plaintiff, Tipped Collective Members and Tipped Subclass Members failed to state the accurate amounts of tips earned by tipped employees.

117.     Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants failed to track daily tips earned by Plaintiff, Tipped Collective Members and Tipped Subclass Members, and failed to keep accurate records thereof.

118.     Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Plaintiff, Tipped FLSA Collective Members and Tipped Subclass Members were required to engage more than two (2) hours and/or twenty percent (20%) of their workdays performing non-tipped side work, including pre-shift side work, running side work, and closing side work. These duties included but are not limited to folding napkins; cleaning and organizing the stations; preparing candles; making coffee; washing and polishing silverware; stocking napkins, cups, and condiments; setting up the outdoor dining area; and cleaning the restaurant.

119.     Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants failed to keep accurate record of the actual hours worked by their employees at Porterhouse Restaurants.

120.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Plaintiff, FLSA Collective Members and Class Members similarly suffered from Defendants' impermissible rounding of hours worked and failure to pay full and proper wages for all hours worked.

121.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants failed to pay any wages to Plaintiff, FLSA Collective Members and Class Members for work performed at Porterhouse Restaurants during their training period.

122.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants failed to pay Plaintiff, Tipped FLSA Collective Members and Tipped Subclass Members the tips that they earned from customers during their training period.

123.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, the workdays of Plaintiff and Class Members regularly exceeded ten (10) hours per day. However, Defendants failed to pay Plaintiff and Class Members the spread-of-hours premium.

124.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants kept a portion of the tips that Plaintiff and Tipped Subclass Members earned from customers.

125.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants failed to provide proper wage notices to Plaintiff and Class Members.

126.    Based on Plaintiff's observations and conversations with co-workers at Porterhouse Restaurants, Defendants failed to provide proper wage statements to Plaintiff and Class Members. The wage statements that were provided to Plaintiff and Class Members failed to accurately reflect the employees' actual hours worked and failed to state other required information.

127.    Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiff, Tipped FLSA Collective Members and Tipped Subclass Members, in violation of the FLSA and NYLL.

128.    Defendants knowingly and willfully operated their business with a policy of failing to pay the full and proper wages to Plaintiff, FLSA Collective Members and Class Members for all hours worked, including training time, in violation of the FLSA and NYLL.

129.    Defendants knowingly and willfully operated their business with a policy of keeping a portion of the tips that Plaintiff and Tipped Subclass Members earned from customers, in violation of the FLSA and NYLL.

130.    Defendants knowingly and willfully operated their business with a policy of failing to pay the spread-of-hours premium to Plaintiff and Class Members, in violation of the NYLL.

131.    Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff and Tipped Subclass Members the tips they earned from customers during their training period, in violation of the NYLL.

132.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff and Class Members pursuant to the requirements of the NYLL.

133.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members pursuant to the requirements of the NYLL.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

134.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

135.    The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

136.    Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage for all hours worked up to forty (40) per workweek, and overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

137.    Defendants are not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants failed to inform Plaintiff and Tipped FLSA Collective Members of the provisions of subsection 203(m) of the FLSA.

138.    Defendants are also not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants kept a portion of the tips earned by Plaintiff and Tipped FLSA Collective Members.

139.    Defendants are also not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants required Plaintiff and Tipped FLSA

Collective Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

140.    Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage and overtime wages for all hours worked due to Defendants' time-shaving and improper rounding of employees' hours worked.

141.    Defendants failed to pay Plaintiff and FLSA Collective Members the minimum wage and overtime wages for all hours worked during the employees' training period.

142.    Defendants unlawfully kept a portion of tips that Plaintiff and Tipped FLSA Collective Members earned from customers, in violation of the FLSA, 29 U.S.C. § 203(m).

143.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

144.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members the lawful minimum wage and overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

145.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

146.    As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied minimum wage, overtime wages and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to

recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

147.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

148.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

149.    At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

150.    Defendants failed to pay Plaintiff and Tipped Subclass Members the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

151.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiff and the Class the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from February 2011 through December 30, 2013; (b) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (c) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (d) $9.00 per hour for all hours worked from December 31,

2015 through December 30, 2016; (e) $11.00 per hour for all hours worked from December 31, 2016 through December 30, 2017; (f) $13.00 per hour for all hours worked from December 31, 2017 through December 30, 2018; and (g) $15.00 per hour for all hours worked from December 31, 2018 through the present.

152.    Defendants have failed to notify Plaintiff and Tipped Subclass Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

153.    Defendants required Plaintiff and Tipped Subclass Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

154.    Defendants failed to pay Plaintiff and the Class the full and proper wages for all hours worked due to Defendants' time-shaving and improper rounding of employees' hours worked.

155.    Defendants failed to pay Plaintiff and the Class the full and proper wages for all hours worked during the employees' training period.

156.    Defendants failed to pay Plaintiff and Tipped Subclass Members any of the tips they earned from customers during their training period.

157.    Defendants have failed to pay Plaintiff and the Class the spread-of-hours premium for each day that the length of the interval between the beginning and end of their workday was greater than ten (10) hours.

158.    Defendants unlawfully retained part of the gratuities received by Plaintiff and Tipped Subclass Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

159.    Defendants failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

160.    Defendants failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

161.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Class as required by the NYLL and the supporting New York State Department of Labor Regulations.

162.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiff and Tipped Subclass Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

163.    Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

164.    As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid wages due to time-shaving and improper rounding of employees' hours worked, unpaid wages for training time, unpaid spread-of-hours premium, misappropriated tips, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

**COUNT III**

**VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**

165.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

166.    Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

167.    Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by engaging in discriminatory employment practices, subjecting Plaintiff to a hostile work environment based on her pregnancy, and ultimately terminating her employment on the basis of her pregnancy.

168.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

169.    As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

170.     Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

**COUNT IV**

**<u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
(FAILURE TO ACCOMMODATE)</u>**

171.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

172.     Plaintiff is an employee and a protected person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

173.     Under the NYSHRL, "[i]t shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee." NYSHRL § 296(3)(a). Defendants violated Plaintiff's statutorily protected rights under the NYSHRL, New York Executive Law, Article 15 §§ 290 *et seq.*, by being aware of and failing to reasonably accommodate Plaintiff's request for an accommodation based on her pregnancy. Defendants were aware of Plaintiff's pregnant condition, Plaintiff requested a reasonable accommodation related to her pregnancy-related condition that would not impose an undue hardship on Defendants' business, and Defendants refused to provide an accommodation for her.

174.     At minimum, Defendants were required to engage in an individualized and interactive process regarding Plaintiff's request for a reasonable accommodation but Defendants failed to do so.

175. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

176. As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

177. Due to Defendants' violations of the NYSHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices as described herein; (2) economic damages; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees.

## COUNT V

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

178. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

179. Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

180. Defendants violated Plaintiff's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by treating her less well than Defendants' other employees on the basis of her pregnancy. Defendants engaged in discriminatory employment practices, subjected Plaintiff to a hostile work environment based on her pregnancy, and ultimately terminated her employment on the basis of her pregnancy.

181. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

182.    As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

183.    Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## COUNT VI

### VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW (FAILURE TO ACCOMMODATE)

184.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

185.    Plaintiff is an employee and a protected person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

186.    Under the NYCHRL, "[i]t shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation, as defined in section 8-102, to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job." Administrative Code of the City of New York § 8-107(22)(a) and (28). Defendants violated Plaintiff's statutorily protected rights under the NYCHRL by being aware of and failing to reasonably accommodate Plaintiff's pregnancy-related accommodation request. Defendants were aware of Plaintiff's pregnant condition, Plaintiff requested a reasonable accommodation related to her pregnancy-related condition that would not impose an undue hardship on Defendants' business, and Defendants refused to provide an accommodation for her.

187.   At minimum, Defendants were required to engage in a "cooperative dialogue" regarding Plaintiff's request for a reasonable accommodation but Defendants failed to do so.

188.   Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

189.   As a result of Defendants' unlawful employment practice, Plaintiff sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

190.   Due to Defendants' violations of the NYCHRL, namely, employment discrimination on the basis of pregnancy, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a.   Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.   Certification of this case as a class action pursuant to Rule 23;

c.   Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d.   An award of unpaid minimum wage due under the FLSA and NYLL;

e.   An award of unpaid wages resulting from Defendants' failure to pay wages for all hours worked, in violation of the FLSA and NYLL;

f.  An award of unpaid wages resulting from Defendants' failure to pay wages for training time, in violation of the FLSA and NYLL;

g.  An award of unlawfully retained tips due under the FLSA and NYLL;

h.  An award of unpaid spread-of-hours premium due under the NYLL;

i.  An award of liquidated damages as a result of Defendants' willful failure to pay minimum wage; full and proper wages for all hours worked, including training time; spread-of-hours premium; and misappropriated tips, pursuant to the FLSA or NYLL;

j.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

k.  Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

l.  An order awarding relief for Defendants' discriminatory conduct, including but not limited to economic, compensatory and punitive damages;

m.  Pre-judgment and post-judgment interest;

n.  Reasonable attorneys' fees and costs of this action;

o.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

p.  A declaratory judgment that the practices complained of herein are unlawful under the NYSHRL and NYCHRL;

q.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

r.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by

jury on all issues so triable as of right by jury.


Dated:  February 14, 2020                    Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:      */s/ Clara Lam*

Clara Lam, Esq. (CL6399)
275 7th Avenue, Suite 701
New York, NY 10001
Tel.: (718) 971-0326
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*